```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
                                                                     :
JEFFREY HARRISMAN,                                                   :
                                                                     :
                                Plaintiff,                           :
                                                                     :          19-CV-2986 (JMF)
                -v-                                                  :
                                                                     :          OPINION AND ORDER
THE CITY OF NEW YORK DEPARTMENT OF                                   :
TRANSPORATION, et al.,                                               :
                                                                     :
                                Defendants.                          :
                                                                     :
---------------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

Plaintiff Jeffrey Harrisman, proceeding without counsel, brings claims against his former employer, the City of New York Department of Transportation ("DOT"); his union, Local 1549, District Council 37, American Federation of State, County and Municipal Employees, AFL-CIO (the "Union"); and employees of one or the other. In particular, he brings claims against DOT under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, alleging that he was subjected to a hostile work environment based on his religion and the victim of retaliation for his complaints of discrimination. *See* ECF No. 24 ("Compl."). He further alleges that DOT and the Union violated his due process rights under Section 72 of the New York Civil Service Law ("Section 72") when DOT placed him on involuntary leave of absence due to mental illness. *See id.* Defendants now move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss. For the reasons that follow, Defendants' motions are GRANTED.

## BACKGROUND

The following facts — drawn from the First Amended Complaint ("Complaint") and documents that are attached to, or incorporated by reference in, the Complaint — are assumed to

be true for purposes of this motion. *See, e.g.*, *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

Harrisman, a Seventh-Day Adventist, was employed as a clerical associate in the Red Light Camera Unit in the Traffic Operations Division at DOT from September 14, 2015, to February 20, 2018, when he was placed on a leave of absence under Section 72, pending resolution of disciplinary charges and a determination of his fitness to perform his job duties. Compl. 4, 47, 96.[1] As a clerical associate, Harrisman was required to process traffic tickets for red traffic light cameras, bus lanes, and mobile speed camera vans. *Id*. at 96.

Leading up to his involuntary leave of absence, Harrisman had a tense, if not contentious, relationship with his female co-workers. According to Harrisman, the women he worked with "didn't like [his] religious beliefs toward women," and harassed him by gossiping about him "like grade school girls." *Id*. at 4. In particular, Harrisman sensed that his co-workers "all expected [him] to desire them and pursue them" even though he does not "get involved socially or sexually with non-Christian women." *Id*. His co-workers were also loud and disruptive, oftentimes stopping to chatter around his desk, which forced him to wear earphones to block out the noise. Harrisman complained about his female co-workers' behavior on November 13 and 27, 2017, over e-mail to the then-director of his unit Veronica Hyatt. In one e-mail, Harrisman called several of his peers "gender predators" and noted that their stalker-like conduct with respect to him made him uncomfortable and was "meant to disturb and create [an] angry response." *Id*. at 106-09. But when asked about how he was being stalked, Harrisman merely stated that he and his co-workers would occasionally frequent the same location for lunch. *Id*. at 97-98. DOT never took disciplinary action against his co-workers, *id*. at 5; instead, at Hyatt's

---

[1] Due to inconsistent pagination in Harrisman's Complaint, citations to ECF No. 24 refer to the page numbers automatically generated by the ECF system to avoid confusion.

recommendation, Harrisman eventually filed a charge with DOT's EEO Office, which later "determined that the issues described were not an EEO matter." *Id*. at 97, 138.

Things came to a head on or around January 8, 2018, when Harrisman had a violent encounter with his co-worker Jacqueline Viera. Harrisman, in the midst of an argument with Viera, "lifted [a] fan with both hands" and "slammed the fan on the desk where [she] was sitting at the time," all the while yelling at and threatening her. *Id*. at 25 ("EEOC Determination"); *see also id.* at 6. Harrisman's supervisor, Thomas David, and Viera reported the incident, which Harrisman disputed as false and exaggerated; according to Harrisman, he merely set the fan on Viera's desk. *Id*. at 83, 157-58. Nevertheless, the next day, Harrisman was told to go home, placed on paid emergency leave, and given a Notice to Appear in front of the DOT Advocate Office on January 22, 2018. *Id*. at 71, 75, 79, 158. At the hearing, disciplinary counsel Erica Caraway and Ifeamaka Igbokwe questioned Harrisman about his e-mail complaints to Hyatt, the January 8th incident with Viera, and other reported incidents of Harriman's allegedly aggressive response to his female co-workers' attempts to interact with him. *Id*. at 71, 98. Eddie Douglass from the Union represented Harrisman during the hearing and advised him how to answer the investigators' questions. *Id*. at 6. Instead of using Section 75 of the New York Civil Service Law to discipline Harrisman for his alleged Code of Conduct violation, *id*. at 158, Caraway and Igbokwe subsequently decided to continue Hallway's removal with pay and, by written notice, directed him to conduct a medical examination to assess his fitness for duty pursuant to Section 72, the state's statute for disability leave, *id*. at 71, 95-98, 112. The notice did not specify which facts gave rise to the Advocate Office's doubt that Harrisman was fit to work. *Id*. at 7, 112.

On January 29, 2018, Dr. Edwin Robbins, the medical officer selected by the Commissioner of the Department of Citywide Administrative Services, examined Harrisman and diagnosed him with paranoid schizophrenia. In particular, Dr. Robbins found that Harrisman

was "beset by sexual preoccupation, rigid in his thinking and delusional with a great deal of difficulty understanding and adapting to women." *Id*. at 112, 118.  This "sexual preoccupation and self-protective behavior," Dr. Robbins concluded, "interfered with [Harrisman's] concentration and reduced his productivity." *Id*. at 118.  Dr. Robbins recommended psychotherapy and medication to control Harrisman's "delusional and paranoid thinking," and ultimately determined that he "is not fit to return to work as a Clerical Associate." *Id*.  In light of Dr. Robbins's assessment, Caraway notified Harrisman that he would be placed on unpaid leave of absence pursuant to Section 72, effective February 20, 2018. *Id*. at 114.

Harrisman appealed Dr. Robbins's determination and requested a hearing at the NYC Office of Administrative Trials and Hearings ("OATH"). *Id*. at 128.  Specifically, Harrisman argued that the doctor's assessment stemmed from a biased understanding of what Harrisman told him about his religion.  *Id*. at 119-23.  Harrisman also contested the Advocate Office's use of his e-mails as proof of his wrongdoing, framing them as nothing more than "complaints," "descriptions of wrongdoing by [his] accusers and supervisor." *Id*. at 123, 131.  Harrisman further argued that Caraway violated his due process rights by "using Section 72 as a way to punish [him]" for filing complaints against his co-workers. *Id*. at 131.  Harrisman's confidence in his mental health notwithstanding, at a pretrial hearing held on March 7, 2018, Harrisman's counsel and the judge both urged him to follow Dr. Robbins's recommended treatment for paranoid schizophrenia. *Id*. at 130.  Harrisman refused.  On March 16, 2018, the OATH judge confirmed Harrisman's unpaid leave of absence. *Id*. at 25, 132.  On May 8, 2018, Harrisman filed charges of discrimination with the EEOC, specifically alleging that discrimination occurred on January 22, 2018, at the Advocate Office hearing. *Id*. at 10.  On February 21, 2019, the EEOC issued Harrisman a Right to Sue Notice.  *Id*.  Harrisman then commenced this lawsuit. *See* ECF No. 2.

## LEGAL STANDARDS

In evaluating Defendants' motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all facts set forth in the Complaint as true and draw all reasonable inferences in Harrisman's favor. *See, e.g.*, *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). A claim will survive a Rule 12(b)(6) motion, however, only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). A plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully," *id.*, and cannot rely on mere "labels and conclusions" to support a claim, *Twombly*, 550 U.S. at 555. If the plaintiff's pleadings "have not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570. Where, as here, a plaintiff brings claims of employment discrimination, however, "[t]he facts required by *Iqbal* to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination. They need only give plausible support to a minimal inference of discriminatory motivation." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015); *see Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86-87 (2d Cir. 2015).

Even under the heightened pleading standards set by *Iqbal* and *Twombly*, a court is "obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). Thus, when considering *pro se* submissions, such as Harrisman's, the Court should interpret them "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks omitted).

Notwithstanding the Court's obligation, "to survive a motion to dismiss, a *pro se* plaintiff must still plead sufficient facts to state a claim that is plausible on its face." *Bodley v. Clark*, No. 11-CV-8955 (KBF), 2012 WL 3042175, at *2 (S.D.N.Y. July 23, 2012); *see also, e.g.*, *Green v. McLaughlin*, 480 F. App'x 44, 46 (2d Cir. 2012) (summary order) ("[P]ro se complaints must contain sufficient factual allegations to meet the plausibility standard . . . .").

## DISCUSSION

Liberally construed, the Complaint alleges claims under two statutes: hostile work environment and retaliation claims under Title VII and due process claims under Section 72.[2] The Court will address each in turn.

**A. Claims Under Title VII**.

**1. Hostile Work Environment Claim**

The Court begins with Harrisman's hostile work environment claim under Title VII. To prove a *prima facie* case of a hostile work environment, a plaintiff must demonstrate that (1) his or her workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of the work environment and (2) a specific basis exists for imputing the conduct that created the hostile environment to the defendant. *See, e.g.*, *Gorzynski*

---

[2] In his original complaint, Harrisman brought a third cause of action for breach of duty of fair representation against the Union premised on the Union's alleged "refus[al] to intervene in grievance disputes," and a fourth cause of action for creed discrimination premised on the determination by DOT's appointed doctor that Harrisman's "religious and spiritual thinking is delusional and not normal" and his supervisor's alleged advice "not to talk about religious matters in the unit." ECF No. 2, at 24. The Complaint, however, does not include these claims or a separate Title VII claim against the Union or its employees, Douglass and Maureen Gallagher. *See* Compl. 2; *see also* ECF No. 27 ("Union Mem."), at 10-11. Accordingly, Harrisman's third and fourth causes of action are deemed abandoned, *see, e.g.*, *Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 143 (2d Cir. 2016); *Camarda v. Selover*, 673 F. App'x 26, 30 (2d Cir. 2016) (summary order), and any Title VII claims against the Union, Douglass, and Gallagher are dismissed substantially for the reasons stated in the Union's brief, *see* Union Mem. 20-23.

*v. JetBlue Airways Corp.*, 596 F.3d 93, 102-03 (2d Cir. 2010). "A plaintiff must show not only that []he subjectively perceived the environment to be abusive, but also that the environment was objectively hostile and abusive." *Id.* at 102. The law in this Circuit is clear that "[i]solated incidents usually will not suffice to establish a hostile work environment." *Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 175-76 (2d Cir. 2012). That is, "[t]he incidents of allegedly offensive conduct must also be 'more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 75 (2d Cir. 2001) (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)). The Second Circuit has also noted that "many bosses are harsh, unjust, and rude," but that this fact alone is insufficient to create a hostile work environment claim. *Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir. 2002). Hostile work environment claims are evaluated by looking at the totality of the circumstances, which may include the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

Applying these standards here, the Court concludes that Harrisman fails to plead a plausible hostile work environment claim. The gravamen of Harrisman's hostile work environment claim is that his female co-workers talked too much and, in acting like "gender predators," intimidated and harassed him because they did not like his religious views regarding women. *See* Compl. 4, 106. Harrisman, however, provides no facts beyond his own subjective beliefs to suggest that his female co-workers uttered derogatory comments in his presence or targeted him because of his religion. At most, Harrisman's allegations that his female co-workers occasionally talked too much while he was trying to work represent "episodic" instances of "mere [in]offensive utterance[s]," *Harris*, 510 U.S. at 23, and thus are neither severe nor

7

pervasive enough to alter the conditions of his work environment.  *See Garvin v. Potter*, 367 F. Supp. 2d 548, 566-67 (S.D.N.Y. 2005) (holding that repeated attempts to convince plaintiff to work on the Sabbath did not constitute a hostile work environment).

Harrisman appears, in the alternative, to argue that after he complained about his co-workers' behavior in November 2017, his co-workers harassed him by falsely testifying against him in relation to his violent incident with Viera in early January 2018.  *See* Compl. 5.  Conclusory statements about his co-workers aside, these allegations are insufficient to nudge his claim across the line from possible to plausible.  *See Twombly*, 550 U.S. at 555, 570.  Even if it is true that his co-workers and supervisor falsely reported on the January 2018 incident, these are isolated events that sound more in retaliation; by themselves, they do not establish conditions so pervasive or severe as to constitute a hostile work environment.  *See, e.g.*, *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002) ("Hostile environment claims are different in kind from discrete acts.  Their very nature involves repeated conduct."); *Ben-Levy v. Bloomberg L.P.*, No. 11-CV-1554 (KBF), 2012 WL 2477685, at *12 (S.D.N.Y. June 26, 2012) ("What plaintiff tries to do here is turn his discrete claims of discrimination and retaliation, string them together and call that a 'hostile work environment' — that is not sufficient.").  Accordingly, Harrisman's hostile work environment claim must be and is dismissed.

2. **Retaliation Claim**

Next, Harrisman alleges that DOT, his supervisor, and his female co-workers retaliated against him for complaining to his unit director about his female co-workers' behavior in November 2017.  Retaliation claims under Title VII are analyzed pursuant to the well-known *McDonnell Douglas* burden-shifting framework.  *See Littlejohn*, 795 F.3d at 315.  At the pleading stage, "the allegations in the complaint need only give plausible support to the reduced prima facie requirements that arise under *McDonnell Douglas* in the initial phase of a Title VII

8

litigation." *Id*. at 316. "For a retaliation claim to survive a . . . motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated — or took an adverse employment action — against him, (2) because he has opposed any unlawful employment practice." *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018) (brackets omitted) (quoting *Vega*, 801 F.3d at 90). More specifically, Harrisman must allege that "retaliation was a 'but-for' cause of the employer's adverse action[s]." *Id*. at 625 (internal quotation marks omitted). "'But-for' causation does not, however, require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Vega*, 801 F.3d at 90-91 (internal quotation marks and alterations omitted).

Measured against these standards, Harrisman's allegations that he was placed on involuntary disability leave under Section 72 in retaliation for his complaints regarding his female co-workers' behavior toward him are insufficient to state a claim. As Defendants glancingly argue, *see* ECF No. 30, at 9-10, Harrisman fails to allege that he participated in a protected activity when he complained about his co-workers in November 2017. Although both formal complaints to an EEO office and informal complaints to management qualify as "protected activity," *see Kotcher v. Rosa & Sullivan Appliance Ctr., Inc*., 957 F.2d 59, 65 (2d Cir. 1992), Harrisman does not sufficiently allege that, in submitting either, he complained of any unlawful employment practice. Harrisman in his Complaint suggests that he complained of sexual harassment in November 2017, but a closer look at his e-mails to his unit director, which he attached to his Complaint, reveals that was not the case. *See* Compl. 106-109. Neither of Harrisman's e-mails mention sexual harassment, religious discrimination, or any other unlawful behavior. At best, the e-mails reveal petty inter-office disagreements between him and his female co-workers, stemming primarily from how they spoke loudly near his desk, gave him unsolicited advice, called him "Jeff" despite his protestations, and, from Harrisman's

9

perspective, seemingly tried to abuse their positions by offering to help him with assignments. *Id*. at 106-07. At worst, his e-mails reveal a concerning, growing frustration towards his co-workers, with Harrisman stating on November 27, 2017, that "[t]hey are provoking me to become aggressive." *Id.* at 109.

Assuming without deciding that Harrisman had a good faith subjective belief that the conduct he opposed was unlawful under Title VII, such a belief was not reasonable under the circumstances. *See Galdieri–Ambrosini v. Nat'l Realty & Dev. Corp*., 136 F.3d 276, 292 (2d Cir. 1998) ("[T]he plaintiff need not establish that the conduct []he opposed was actually a violation of Title VII, but only that []he possessed a good faith, reasonable belief that the underlying employment practice was unlawful under that statute." (internal quotation marks omitted)); *see also, e.g*., *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 594 (2d Cir. 1988) (holding that the plaintiff did not engage in protected activity where his internal complaint regarding hiring, as alleged, did not point out discrimination). Simply put, Harrisman's subjective belief that his co-workers were "gender predators," without more, does not make their actions unlawful. *See, e.g.*, *Ruhling v. Tribune Co.*, No. 04-CV-2430 (ARL), 2007 WL 28283, at *21 (E.D.N.Y. Jan. 3, 2007) (holding that an internal complaint of favoritism was not protected activity where the complaint did not describe discriminatory conduct). Accordingly, Harrisman did not engage in a protected activity and his retaliation claim fails as a matter of law.

Even if Harrisman's November 2017 complaints do qualify as protected activity, however, his retaliation claims still fail because he does not sufficiently establish a but-for causal link between his complaints and his involuntary leave of absence. Harrisman's only evidence of a causal connection between his complaints and DOT placing him on involuntary leave are his belief that DOT unfairly relied on his November 2017 complaints in making its decision and the

temporal proximity between his November 2017 complaints, his January 22, 2018 hearing in front of the Advocate's Office, and his February 20, 2018 placement on immediate emergency leave of absence. The allegations, however, are insufficient to state a claim of retaliation. First, Harrisman provides no specific facts to show, directly or indirectly, that DOT's reliance on his complaints, which also contained relevant admissions of his anger towards his co-workers, was due to a retaliatory motive. *See, e.g.*, *Sosa v. N.Y.C. Dep't of Educ.*, 368 F. Supp. 3d 489, 518 (E.D.N.Y. 2019). Second, the temporal proximity between Harrisman's testimony and the alleged adverse employment action — approximately three to four months — is insufficient, standing alone, to establish a causal connection. *See, e.g.*, *Chukwueze v. NYCERS*, 891 F. Supp. 2d 443, 457 (S.D.N.Y. 2012) (dismissing a Title VII retaliation claim where the only evidence of causal connection was a three-to-six-month gap between the protected activity and the adverse employment action); *McDowell v. N. Shore–Long Island Jewish Health Sys., Inc*., 788 F. Supp. 2d 78, 83 (E.D.N.Y. 2011) (dismissing a Section 1981 retaliation claim where the only evidence of a causal connection was a three-to-four-month gap). *See generally Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (noting that retaliation claims relying solely on temporal proximity to demonstrate a causal connection are difficult to prove and that the temporal proximity must be "very close" (internal quotation marks omitted)). Instead, as Harrisman concedes, DOT put him on emergency involuntary leave the day after he had a violent encounter with Viera. Such an immediate response belies the notion that DOT retaliated months later for Harrisman's November 2017 complaints. Accordingly, Harrisman's retaliation claims must be dismissed.[3]

---

[3] Liberally construed, Harrisman's Complaint should arguably be read to raise analogous claims of hostile work environment and retaliation under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law. § 290 *et seq.*; and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq. See, e.g.*, *McLeod v. Jewish Guild for the Blind*, 864 F.3d

B. **Section 72 Claim**

Finally, Harrisman raises a due process claim based on three theories: first, that DOT unlawfully used Section 72 to discipline him for his January 2017 incident with Viera; second, that DOT failed to provide him with proper notice under the statute; and third, that DOT used his leave time to pay him during his paid leave period leading up to the OATH hearing. ECF No. 35 ¶¶ 8-10. Regardless of the theory, Harrisman's claim "must fail as there can be no Due Process Clause violation 'so long as the State provides a meaningful post-deprivation remedy.'" *Clark v. Dominique*, 798 F. Supp. 2d 390, 401 (N.D.N.Y. 2011) (quoting *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996)). In New York State, an Article 78 proceeding provides an avenue of post-deprivation redress that satisfies due process requirements. *See Gudema v. Nassau Cty.*, 163 F.3d 717, 724 (2d Cir. 1998). Indeed, all public employees "must invoke [A]rticle 78 to review [adverse actions] that are allegedly arbitrary, capricious, or prohibited by statute or the constitution." *Finley v. Giacobbe*, 79 F.3d 1285, 1292 (2d Cir. 1996). Harrisman failed to pursue an Article 78 proceeding, "which was both available and more than adequate in light of the interests asserted and the actions alleged." *Clark*, 798 F. Supp. 2d at 401. Under these circumstances, he "may not maintain a civil action for deprivation of [his] property without due process" in federal court. *Id.*; *see also Scotto v. City of New York*, No. 18-CV-4228 (LTS), 2019 WL 6701919, at *5-6 (S.D.N.Y. Dec. 9, 2019). Accordingly, Harrisman's due process claims must be and are dismissed.

---

154, 158 (2d Cir. 2017) (holding that, where a pro se complaint's "factual allegations suggested claims under the NYSHRL and NYCHRL, the district court was required to construe her complaint as asserting claims under those laws, even [though] she failed to check the appropriate blank" on the complaint form). The NYSHRL claims, which are governed by the same standards as the federal claims, are dismissed for the reasons set forth above; by contrast, the Court declines to exercise supplemental jurisdiction over any claims under the NYCHRL, as they are subject to a different standard and must be analyzed separately. *See, e.g.*, *Downey v. Adloox Inc.*, No. 16-CV-1689 (JMF), 2018 WL 5266875, at *9 (S.D.N.Y. Oct. 23, 2018).

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are GRANTED, and Harrisman's Complaint is DISMISSED. In the case of any claims under the NYCHRL, that dismissal is without prejudice to refiling in state court; otherwise, it is with prejudice.

Additionally, the Court declines to grant Harrisman leave to amend *sua sponte*. Although leave to amend a pleading should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), and courts should generally grant *pro se* plaintiffs leave to amend "at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated," *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (per curiam) (internal quotation marks omitted), "it is within the sound discretion of the district court to grant or deny leave to amend," *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). The Court granted Harrisman leave to amend once prior, *see* ECF No. 17, and now Harrisman neither seeks leave to amend nor suggests that he possesses additional facts that could cure the defects in his dismissed claims. *See, e.g.*, *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *Fischman v. Mitsubishi Chem. Holdings Am., Inc.*, No. 18-CV-8188 (JMF), 2019 WL 3034866, at *7 (S.D.N.Y. July 11, 2019) (declining to grant leave to amend as to certain claims in the absence of any suggestion that additional facts could remedy defects in the plaintiff's pleading). Furthermore, Harrisman was on notice of Defendants' arguments when he filed the Complaint in response to Defendants' original motion to dismiss, and he was expressly warned that he would "not be given any further opportunity" to amend the Complaint. *See* ECF No. 17, at 1. In light of these circumstances, the Court will not *sua sponte* grant leave to amend. *See, e.g.*, *Overby v. Fabian*, No. 17-CV-3377 (CS), 2018 WL 3364392, at *14 (S.D.N.Y. July 10, 2018) ("Plaintiff's failure to fix deficiencies in his previous pleading, after being provided ample notice of them, is alone sufficient ground to deny leave to amend *sua sponte*."); *see also Nat'l Credit Union*

*Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first." (alteration and internal quotation marks omitted)).

This Court certifies, pursuant to Title 28, United States Code, Section 1915(a)(3), that any appeal from this Opinion and Order would not be taken in good faith, and *in forma pauperis* status is thus denied. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to terminate ECF Nos. 25 and 28, to close this case, and to mail a copy of this Opinion and Order to Harrisman.

SO ORDERED.

Dated: September 1, 2020
 New York, New York

JESSE M. FURMAN
United States District Judge